**In re Gordon Gipp DUPREE, Relator.**

No. 05–03–01303–CV.

Court of Appeals of Texas, Dallas.

Oct. 22, 2003.

Michelle May, May Firm, Dallas, for Relator.

Rick Robertson, Koons, Fuller, Vanden Eykel & Robertson, Plano, for Real Party.

Before Justices WRIGHT, MOSELEY, and RICHTER.

## OPINION

Opinion by Justice MOSELEY.

In this original proceeding, Relator Gordon Gipp Dupree seeks a writ of habeas corpus to secure his release from an order of contempt and a commitment order arising from Dupree's failure to make contractual alimony payments pursuant to a divorce decree. *See* TEX. GOV'T CODE ANN. § 22.221(d) (Vernon Supp.2003); *see also* TEX.R.APP. P. 52. By order of this Court, Dupree was released from custody upon posting bond, pending our decision on the writ. For the reasons that follow, we conclude that the order on contempt and the commitment order are void. Accordingly, we grant Dupree's petition for writ of habeas corpus, set aside the orders as void, order Dupree released from the bond set by this Court, and order him discharged from custody.

### FACTUAL AND PROCEDURAL BACKGROUND

Dupree and Robin Dupree, now Robin Fair, were granted a divorce on January 8,

1996. Under the heading "Contractual Alimony," the divorce decree provided:

> It is the mutual desire of the parties to provide a continuing measure of support for ROBIN ANN DUPREE, Receiving Party, after divorce. These support payments undertaken by GORDON GIPP DUPREE, Paying Party, are intended to qualify as contractual alimony as that term is defined in ... [the Internal Revenue Code].... All provisions of this article will be interpreted in a manner consistent with that intention.

The decree provided that Dupree would pay Fair $8,500 per month "as and for alimony." The payments would be payable beginning March 1, 1996, and would continue for 121 months. The payments terminated on Fair's death, but there was no provision for termination on Fair's remarriage or on Dupree's death. The decree further provided: "This alimony obligation undertaken by Paying Party is contractual in nature." The decree provided for acceleration on Dupree's default in making alimony payments.

In January 2002, Fair moved to have Dupree held in contempt of court for failure to make twenty-one payments. On March 26, 2002, following a hearing, the trial court signed an order finding Dupree guilty of twenty-one violations of the obligation to make alimony payments as provided in the divorce decree, adjuding Dupree in contempt of court, and ordering him confined to jail for seventy-two hours, until he paid the alimony and interest arrearages and attorney's fees found by the

court. The same order also suspended Dupree's commitment to jail on condition that he make certain payments. The order also granted Fair judgment against Dupree for the alimony and interest arrearages, attorney's fees, and post-judgment interest.

Dupree made only two of the payments. In October 2002, Fair filed a motion to revoke the suspended commitment and to jail Dupree pursuant to the contempt order.[1] In June 2003, the trial court held a hearing on Fair's motion to revoke. The trial court orally revoked the previous suspension. On September 2, 2003, the trial court signed an order revoking suspension and committing Dupree to county jail. It ordered Dupree confined to jail "for seventy-two (72) hours, and until" he pays the alimony and interest arrearages and attorney's fees.

Dupree filed a petition for writ of habeas corpus seeking relief from the March 26, 2002 order of contempt and the September 2, 2003 order revoking suspension. In his first issue, Dupree contends that the failure of the alimony provisions in the divorce decree to contain command or order language renders the provisions unenforceable as an order and, therefore, unenforceable by contempt remedies. In his second issue, Dupree contends the provisions in the divorce decree for contractual alimony, which exceeded the statutory authority of a trial court to award, are unenforceable by contempt remedies because of the constitutional prohibition against imprisonment for a debt. Fair replies that

1. Fair also filed another request for contempt for additional violations of the decree, including failure to pay premiums on a life insurance policy and the children's medical expenses. That request was also before the court at the June 19, 2003 hearing. In an order signed September 3, 2003, the trial court found Dupree failed to make previously ordered life insurance payments, payments for the medical expenses, and alimony payments for March through June 2003. That order found that Dupree was in contempt of the enumerated violations and granted judgment in Fair's favor for the child support arrearages and interest and the alimony arrearages and interest. The September 3 order is not the subject of this habeas proceeding.

the agreement to pay alimony is an obligation enforceable by contempt pursuant to section 8.509(a) of the family code. Fair argues that the absence of the words "command" or "order" with respect to the decree's provisions regarding alimony is not determinative. Fair also argues that "an agreement for the payment of maintenance," enforceable under section 8.509(a), includes the alimony provided by the agreement of the parties in this case.

## STANDARD OF REVIEW

■ An original habeas corpus proceeding is a collateral attack on the contempt judgment. *Ex parte Dolenz,* 893 S.W.2d 677, 679 (Tex.App.-Dallas 1995, orig. proceeding). The relator bears the burden to show the contempt order is void, not merely voidable. *Id.* A relator must conclusively show his entitlement to the writ. *Id.* An order is void if it is beyond the power of the court to enter it, or if it deprives the relator of liberty without due process of law. *Ex parte Barnett,* 600 S.W.2d 252, 254 (Tex.1980) (orig.proceeding).

## DISCUSSION

■ For a person to be held in contempt for disobeying a court decree, the decree must spell out the details of compliance in clear, specific, and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him. *Ex parte Slavin,* 412 S.W.2d 43, 44 (Tex.1967) (orig.proceeding). Thus, to sentence a party to confinement for contempt of a prior court order, that order must have "unequivocally commanded" the party to perform the duties or obligations imposed on him. *Ex parte Padron,* 565 S.W.2d 921, 921 (Tex.1978) (orig.proceeding) (citing *Slavin,* 412 S.W.2d at 44).

■ Dupree argues that his obligation to make alimony payments arose from the parties' agreement pursuant to section 7.006 of the family code, which provides for agreements incident to divorce:

"To promote amicable settlement of disputes in a suit for divorce ..., the spouses may enter into a written agreement concerning ... maintenance of either spouse. .... If the court approves the agreement, the court may set forth the agreement in full ... in the final decree."

*Id.* § 7.006(a), (b) (Vernon 1998). An action to enforce a decree is governed by chapter 9 of Title 1 of the family code. *See* TEX. FAM.CODE ANN. §§ 9.001–.302 (Vernon 1998 & Supp.2003); *Woolam v. Tussing,* 54 S.W.3d 442, 449 (Tex.App.-Corpus Christi 2001, no pet.). Section 9.012(b) provides that the trial court's contempt power may not be used to enforce an award in a decree of future installments, except for a sum of money in existence at the time the decree was rendered, or in a matured right to future payments. TEX. FAM.CODE ANN. § 9.012(b) (Vernon 1998); *Woolam,* 54 S.W.3d at 449. Moreover, agreements incorporated into a final divorce decree are considered contracts. *Traylor v. Traylor,* 789 S.W.2d 701, 703 (Tex.App.-Texarkana 1990, no writ); *see Ex parte Duncan,* 462 S.W.2d 336, 337 (Tex.Civ.App.-Houston [1st Dist.] 1970, orig. proceeding) (holding that, in absence of language ordering or otherwise directing relator to make payment pursuant to agreement on community property division, payments rested purely in contract). A person may contract to support his spouse, and that obligation, to the extent it exceeds his legal duty, is a debt. *Ex parte Hall,* 854 S.W.2d 656, 658 (Tex.1993) (orig.proceeding). The Texas Constitution prohibits imprisonment for the failure to comply with an order to pay a "debt." TEX.

CONST. art. I, § 18 ("No person shall ever be imprisoned for debt.").

Nevertheless Fair argues that, despite the lack of "order" or "command" language, Dupree's agreement to pay contractual alimony was approved by the court and is therefore an obligation enforceable pursuant to section 8.059(a) of the family code. Section 8.059(a) provides that the court may enforce by contempt the court's maintenance order or an agreement for the payment of maintenance voluntarily entered into between the parties and approved by the court. TEX. FAM.CODE ANN. § 8.059(a) (Vernon Supp.2003). The statute defines "maintenance" as "an award in a suit for dissolution of a marriage of periodic payments from the future income of one spouse for the support of the other spouse." *Id.* § 8.001(1). When the duration of the marriage is ten years or longer, the court may order maintenance for either spouse only if:

the spouse seeking maintenance lacks sufficient property, including property distributed to the spouse under this code, to provide for the spouse's minimum reasonable needs, as limited by Section 8.054, and the spouse seeking maintenance:

(A) is unable to support himself or herself through appropriate employment because of an incapacitating physical or mental disability;

(B) is the custodian of a child who requires substantial care and personal supervision because a physical or mental disability makes it necessary, taking into consideration the needs of the child, that the spouse not be employed outside the home; or

(C) clearly lacks earning ability in the labor market adequate to provide support for the spouse's minimum reasonable needs, as limited by Section 8.054.

*Id.* § 8.051(2)(A)-(C). If a court determines that a spouse is eligible to receive maintenance under chapter 8, it shall determine the nature, amount, duration, and manner of periodic payments by considering all relevant factors including the financial resources of the spouse seeking maintenance and the education and employment skills of the spouses, among others. *Id.* § 8.052(1)-(12) (listing twelve factors in determining maintenance). Subject to an exception for disability, a court may not order maintenance that remains in effect for more than three years after the date of the order. *Id.* § 8.054(a)(1). A court may not order maintenance that requires an obligor to pay monthly more than the lesser of $2,500 or twenty percent of the spouse's average monthly gross income. *Id.* § 8.055. The obligation to pay future maintenance terminates on the death of either party or on the remarriage of the obligee. *Id.* § 8.056(a).

The divorce decree specifically describes Dupree's obligation as "contractual alimony." Nothing in the provisions for "contractual alimony" refers to the spousal maintenance provisions of chapter 8 of the family code. The only statutory reference is to the definition of "contractual alimony" pursuant to the Internal Revenue Code. There are no references to Fair's eligibility for maintenance or the factors considered in determining nature, amount, duration, and manner of payments, pursuant to chapter 8. *See id.* §§ 8.051, .052. Moreover, as noted above, the monthly payments of $8,500 continued for 121 months, regardless of Fair's remarriage, and ended only on Fair's death. Thus, the contractual alimony provisions differ from, and exceed, the statutory provisions for the amount, duration, and termination of spousal maintenance. *See id.* §§ 8.054–.056.

Thus, we agree with Dupree that the contractual alimony provided for in the divorce decree is an agreement pursuant to section 7.009 of the family code, and, therefore, it is considered a contract. We further conclude that the parties' contractual alimony agreement was not an agreement for spousal maintenance made pursuant to chapter 8 of the family code. Consequently, the trial court had no authority to enforce Dupree's contractual alimony obligation by contempt pursuant to section 8.059(a) or section 9.012(b), and in contravention of article I, section 18 of the Texas Constitution.[2]

 We also reject Fair's argument that the contractual alimony is enforceable by contempt because it is part of the judgment. Fair's reliance on *Ex parte Gorena,* 595 S.W.2d 841 (Tex.1979) (orig.proceeding), is misplaced. Contrary to the facts in this case, the judgment in *Gorena* "decreed" that the contemnor make certain payments. *Id.* at 843. Here, there is no such language. *Id.* at 844. Indeed, there is no decretal language in the divorce decree ordering or commanding Dupree to make the alimony payments. Dupree cannot be held in contempt of court for failing to take an action the court never ordered him to take. *See Ex parte Padron,* 565 S.W.2d at 924.

We resolve Dupree's issues one and two in his favor and conclude that the March 26, 2002 order of contempt and suspension and the September 2, 2003 revocation and commitment order are void.

**CONCLUSION**

We **GRANT** Dupree's petition for writ of habeas corpus, release him from the bond posted to this Court by order dated September 4, 2003, and **ORDER** Dupree unconditionally released and discharged from the custody of the Sheriff of Collin County pursuant to, and only from, the March 26, 2002 order of contempt and the commitment order dated September 2, 2003, issued by the judge of the 366th Judicial District Court of Collin County, Texas in cause number 366–52496–95, styled In re Gordon Gipp Dupree.

Because of our disposition of Dupree's first two issues, we need not address his remaining arguments. *See* TEX.R.APP. P. 47.1.

---

**2.** We reject Fair's argument that two cases are directly on point in support of her argument that Dupree can be held in contempt for unpaid spousal maintenance and attorney's fees. First, *In re Cox,* No. 05–02–01036–CV, 2002 WL 1434195 (Tex.App.-Dallas 2002, orig. proceeding) (not designated for publication), is a memorandum opinion and order relating to "spousal maintenance," with no reference to contractual alimony. Second *In re Walker,* No. 01–01–00553 CV, 2001 WL 1014535 (Tex.App.-Houston [1st Dist.] 2001, orig. proceeding) (not designated for publication), refers to, but does not address any issue related to, alimony. We conclude these cases are not persuasive.