# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-05-00558-CV

---

**Randy F. McCollough, Appellant**

**v.**

**Cherie McCollough, Appellee**

---

**FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 340TH JUDICIAL DISTRICT
NO. C-01-0449-F, HONORABLE THOMAS J. GOSSETT, JUDGE PRESIDING**

---

### O P I N I O N

Appellant Randy McCollough sued to modify alimony payments he was required to

make to his ex-wife, appellee Cherie McCollough, under an agreement incident to their divorce. He

relied in part upon provisions in chapter 8, subchapter B of the family code, which govern spousal

maintenance payments. Cherie obtained summary judgment that chapter 8 was inapplicable to

Randy's alimony obligation here, and Randy appeals.[1] We will affirm.

### BACKGROUND

On August 3, 2001, the district court rendered an Agreed Final Decree of Divorce

between Randy and Cherie McCollough. In the decree, the district court found that the parties had

---

[1] For the sake of clarity, we will refer to the parties as Randy and Cherie throughout our opinion.

entered into a separate Agreement Incident to Divorce, approved the agreement, incorporated it by reference, and ordered "the parties to do all things necessary to effectuate the agreement." The agreement, in turn, provided that it was to be enforceable as a contract, stated the intent of providing "a continuing measure of support" for Cherie after divorce that qualified as contractual alimony under the Internal Revenue Code, and required Randy to pay Cherie "$5,000.00 per month as alimony." Payments were to continue for a term of ten years unless one of several specified conditions occurred. One such condition was "the remarriage of" Cherie.

Randy brought the present action to modify his alimony obligations based on his allegations that Cherie had entered into an "informal marriage" to another man. He relied both on the terms of the agreement incident to divorce and various provisions within chapter 8 of the family code. Specifically, Randy pleaded that his obligation to pay alimony terminated under family code section 8.056 because Cherie had "remarried" and had "cohabit[ed] with another person in a permanent place of abode on a continuing, conjugal basis," Tex. Fam. Code Ann. § 8.056(a), (b) (West 2006), and should be modified due to a "material and substantial change of circumstances." *Id.* § 8.057. Randy also claimed that he was entitled to his requested relief via section 8.059 of the family code, which authorizes the district court to enforce by contempt "the court's maintenance order or an agreement for the payment of maintenance voluntarily entered into between the parties and approved by the Court." *Id.* § 8.059.

Cherie answered and sought partial summary judgment that, in relevant part, the remedies of chapter 8 were not applicable to Randy's alimony obligations under the agreement incident to divorce. Specifically, Cherie asserted the following summary judgment grounds: (1)

2

agreements incident to divorce are governed by contract law, not the family code, "and as such are not susceptible to modification based on the Texas Family Code where the contract does not refer to the Family Code for modification"; (2) the agreement to pay alimony here is not subject to the family code because it was created and court-approved without reference to the factors enumerated in chapter 8 for awarding court-ordered maintenance; and (3) "no evidence has been produced that indicated that [Randy] may modify the agreement pursuant to the Family Code" or that "tends to refute the fact that only the terms of the Agreement should dictate the modification of [Randy's] alimony payments."

The district court granted partial summary judgment against Randy's claims "arising under Section 8.056, 8.057 and 8.059, Subchapter B, Chapter 8 of Title 1 of the Texas Family Code."[2] Randy later nonsuited his other claims, and the district court rendered a final judgment denying his claims under chapter 8. From this final judgment, Randy appeals.

---

[2] Without request by either party, the district court subsequently made "findings and conclusions" regarding its rulings granting Cherie's partial summary judgment motion and denying Randy's motion to strike an amendment to the motion that is not at issue on appeal. In relevant part, the court stated that "[t]he Agreement Incident to Divorce in question is governed by contract law, and not Subchapter B of Chapter 8 of the Family Code" and that the effective date language in chapter 8 was not intended to "bring all past, present or future contractual alimony under the authority of Chapter 8, but to affirm that previous court ordered maintenance would be governed under these sections." These "findings and conclusions" do not impact our review of the district court's summary judgment order. *IKB Indus. v. Pro-Line Corp.*, 938 S.W.2d 440, 442 (Tex. 1997); *Linwood v. NCNB Texas*, 885 S.W.2d 102, 103 (Tex. 1994); *Foster v. Centrex Capital Corp.*, 80 S.W.3d 140, 144 (Tex. App.—Austin 2002, pet. denied).

3

**DISCUSSION**

On appeal, Randy brings three issues that can be summarized as: (1) as a matter of law, "spousal maintenance payments" under chapter 8, family code, include alimony payments under agreements incident to divorce; (2) as a matter of law, the agreement incident to divorce here contemplates modification or termination under chapter 8; and (3) alternatively, Randy raised a genuine issue of material fact as to whether the parties intended the agreement incident to divorce to allow modification or termination under chapter 8.[3]

**Standard of review**

We review the district court's grant of summary judgment *de novo*. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005); *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Mid-South Telecomms. Co. v. Best*, 184 S.W.3d 386, 389 (Tex. App.—Austin 2006, no pet.). When reviewing a summary judgment, we take as true all evidence favorable to the

---

[3] In addition, Randy complains that Cherie improperly sought a "no evidence" summary judgment on a "question of law" or did so before an adequate time for discovery had passed. *See* Tex. R. Civ. P. 166a(i). As noted previously, Cherie sought summary judgment based on "no evidence" "that [Randy] may modify the agreement pursuant to the Family Code" or that "tends to refute the fact that only the terms of the Agreement should dictate the modification of [Randy's] alimony payments." We need not reach Cherie's "no evidence" arguments because, as explained below, we hold that her traditional summary judgment grounds alone support the district court's judgment. *See Sheshunoff v. Sheshunoff*, 172 S.W.3d 686, 692 (Tex. App.—Austin 2005, pet. denied) ("Because the trial court's order does not specify the grounds for granting summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious") (citing *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 217 (Tex. 2003)); *see also* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal").

nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co.*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215; *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 291 (Tex. 2004) (citing *Knott*, 128 S.W.3d at 215-16).

Our disposition of this appeal turns largely upon construction of chapter 8 of the family code. The purpose and goal of statutory construction is to give effect to the intent of the legislature. *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999); *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex. 1994). We consider, among other factors, the language of the statute, legislative history, the nature and object the legislature intended to be obtained, and the consequences that would follow from alternative constructions, even when a statute is not ambiguous on its face. Tex. Gov't Code Ann. § 311.023 (West 2005); *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001); *United Servs. Auto. Ass'n v. Strayhorn*, 124 S.W.3d 722, 728 (Tex. App.—Austin 2003, pet. denied). We consider disputed provisions in context, not in isolation. *Texas Workers' Comp. Comm'n v. Continental Cas. Co.*, 83 S.W.3d 901, 905 (Tex. App.—Austin 2002, no pet.); *see Fitzgerald v. Advanced Spine Fixation Sys.*, 996 S.W.2d 864, 866 (Tex. 1999). "[W]e presume that every word of a statute has been included or excluded for a reason . . . ." *Old Am. County Mut. Fire Ins. Co. v. Sanchez*, 149 S.W.3d 111, 115 (Tex. 2004). We also are to presume that the legislature enacted a provision with knowledge of the background law and awareness of existing law. *See* Tex. Gov't Code Ann. § 311.023; *see also Acker v. Texas Water*

*Comm'n,* 790 S.W.2d 299, 301 (Tex. 1990) ("A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it.").

**Background and context of chapter 8**

Prior to 1995, the award of post-divorce alimony or spousal maintenance was held to be impermissible under the statutes and public policy of Texas. *Ex parte Causey*, 944 S.W.2d 18, 19 (Tex. App.—Houston [14th Dist.] 1997, pet. denied). However, the Texas Supreme Court construed this limitation in a manner that prohibited court-ordered alimony but allowed parties to agree to such awards contractually. *See Francis v. Francis*, 412 S.W.2d 29, 31 (Tex. 1967). The court explained that, "When its true meaning is distilled from the statutes and the court decisions of this State, alimony which contravenes the public policy of the State is only those payments imposed by a court order or decree on the husband as a personal obligation for support and sustenance of the wife after a final decree of divorce." *Id*. at 33. By contrast, "obligations assumed by the husband in separation agreements or contracts to make payments for the support of the wife after a divorce decree becomes final, are not obligations to pay alimony and do not violate the public policy of this State." *Id*.

The mere fact than an agreement to pay alimony might be incorporated into a divorce decree and explicitly approved by the court did not render it an unenforceable court order or award of alimony. *Cardwell v. Sicola-Cardwell*, 978 S.W.2d 722, 724 (Tex. App.—Austin 1998, pet. denied). Instead, it has long been held that such alimony agreements and other marital property agreements, even when incorporated into divorce decrees, are enforceable as contracts and governed by contract law. *See, e.g., Allen v. Allen*, 717 S.W.2d 311, 313 (Tex. 1986); *Bishop v. Bishop*, 74

6

S.W.3d 877, 879-80 (Tex. App.—San Antonio 2002, no pet.); *Hurley v. Hurley*, 960 S.W.2d 287, 288 (Tex. App.—Houston [1st Dist.] 1997, no pet.); *Soto v. Soto*, 936 S.W.2d 338, 341 (Tex. App.—El Paso 1996, no writ); *Harvey v. Harvey*, 905 S.W.2d 760, 764 (Tex. App.—Austin 1995, no writ).

This Court has previously summarized the state of the law prior to the enactment of chapter 8 regarding court-ordered alimony and contractual alimony agreements:

> Even before Texas courts could impose spousal support obligations at divorce, parties to a divorce could enter into written agreements providing for the maintenance of either spouse. The court could then incorporate the agreement into the final divorce decree. Before statutory approval of such agreements, the Texas Supreme Court had determined that settlement agreements between a husband and wife obligating one spouse to make periodic payments in support of the other spouse after divorce do not constitute court-ordered alimony and therefore are not void in the State of Texas. The fact that a court expressly approves such an agreement and incorporates it into the final divorce decree does not transform the contractual payments into prohibited court-ordered alimony.

*Cardwell*, 978 S.W.2d at 724 (internal citations omitted).

Against this legal backdrop, effective September 1, 1995, the legislature authorized the award of post-divorce spousal maintenance but strictly limited the circumstances under which it could be awarded. *See* Tex. Fam. Code Ann. §§ 8.001-8.305 (West 2006). In chapter 8, "maintenance" is defined as "an award in a suit for dissolution of a marriage of periodic payments from the future income of one spouse for the support of the other spouse." *Id*. § 8.001(1). The legislature further provided that "the court may order maintenance for either spouse only if":

7

(1) the spouse from whom maintenance is requested was convicted of or received deferred adjudication for a criminal offense that also constitutes an act of family violence under Title 4 and the offense occurred:

    (A) within two years before the date on which a suit for dissolution of the marriage is filed; or

    (B) while the suit is pending; or

(2) the duration of the marriage was 10 years or longer, the spouse seeking maintenance lacks sufficient property, including property distributed to the spouse under this code, to provide for the spouse's minimum reasonable needs, as limited by Section 8.054, and the spouse seeking maintenance:

    (A) is unable to support himself or herself through appropriate employment because of an incapacitating physical or mental disability;

    (B) is the custodian of a child of the marriage of any age who requires substantial care and personal supervision because a physical or mental disability makes it necessary, taking into consideration the needs of the child, that the spouse not be employed outside the home; or

    (C) clearly lacks earning ability in the labor market adequate to provide support for the spouse's minimum reasonable needs, as limited by Section 8.054.

*Id*. § 8.051.

If a court determines that a spouse is eligible to receive maintenance under chapter 8, the court shall then "determine the nature, amount, duration, and manner of periodic payments by considering all relevant factors," including the financial resources of the spouse seeking maintenance and the education and employment skills of the spouses, among others. *Id*. § 8.052(1)-(12) (listing twelve factors in determining maintenance).

The award of maintenance is further limited by section 8.054, which provides that, except in cases of disability, a court may not order maintenance that remains in effect for more than

three years after the date of the order, and section 8.055, which provides that a court may not order maintenance that requires an obligor to pay more than the lesser of $2,500 per month or twenty percent of the spouse's average monthly gross income. *Id*. §§ 8.054(a)(1), 8.055.

**Whether chapter 8 applies to contractual alimony**

Randy contends that the following statutory terms evidence the legislature's intent that chapter 8 embrace not only court-ordered "maintenance" but also alimony agreed to by parties and incorporated into a divorce decree:

- The effective date language governing sections 8.056, 8.057, and 8.059, which provides: "The change in law made by this Act applies to spousal maintenance payments regardless of whether the payments become due before, on, or after the effective date [Sept. 1, 2001] of this Act." Tex. Fam. Code Ann. §§ 8.056, 8.057, 8.059 historical notes (West 2006) [Act of May 22, 2001, 77th Leg., R.S., ch. 807, § 3(b), 2001 Tex. Gen. Laws 1574, 1586]. Randy argues that because the legislature did not explicitly limit "spousal maintenance payments" to "*court-ordered*" spousal maintenance payments, the legislature must have intended each section to apply to *all* past, present, or future maintenance payments, whether court-ordered or not.

- Section 8.059(a), which provides that "[t]he court may enforce by contempt the court's maintenance order *or an agreement for the payment of maintenance voluntarily entered into between the parties and approved by the court*." (emphasis added). Randy contends that this reference demonstrates legislative intent that chapter 8 apply not only to court-ordered maintenance, but to voluntary agreements for payment of maintenance approved by the court.

Randy also asserts broadly that "nowhere within Chapter 8 . . . did the Legislature express any intent that spousal maintenance payments provided in an Agreement Incident to Divorce or an Agreed Final Decree of Divorce [be] excluded from the provisions of the Act." We disagree.

In chapter 8, as previously noted, "maintenance" is defined as "an *award* in a suit for dissolution of a marriage of periodic payments from the future income of one spouse for the support of the other spouse." *Id.* (emphasis added). Virtually all other references to "maintenance" within chapter 8 similarly refer to court-ordered maintenance. *See id.* §§ 8.056(b) ("After a hearing, the court shall terminate the maintenance *order* if the obligee cohabits with another person in a permanent place of abode on a continuing, conjugal basis") (emphasis added); 8.057(a) ("The amount of maintenance specified in a court *order* or the portion of a decree that provides for the support of a former spouse may be reduced by the filing of a motion in the court that originally rendered the *order*.") (emphasis added). The only provision in Subchapter B that contemplates maintenance by agreement is section 8.059, which, as previously noted, contemplates judicial enforcement of "an agreement for the payment of maintenance voluntarily entered into between the parties and approved by the court." *Id.* § 8.059(a); *see also In re Taylor*, 130 S.W.3d 448, 450 (Tex. App.—Texarkana 2004, no pet.) (stating that court may enforce by contempt agreement for the payment of maintenance). But this does not imply that any agreement incident to divorce providing spousal support is *ipso facto* within chapter 8.

"Maintenance" under chapter 8, again, is permitted only under very limited circumstances. *Cardwell*, 978 S.W.2d at 724 n.1. And the legislature authorized such "maintenance" in the context of a well-established legal distinction between court-ordered alimony (which was held to be impermissible) and alimony by agreement (which, even when incorporated into a divorce decree, was permitted). The legislature's evident intent in chapter 8 was to create narrow circumstances in which previously prohibited forms of spousal support could be awarded,

10

not to govern the forms of contractual alimony previously permitted. *See id.*; *Causey*, 944 S.W.2d at 20-21; *see also* Tex. Gov't Code Ann. § 311.023.

Nothing in the effective date language changes this conclusion. The legislature's reference to "[t]he change in law made by this Act applies to spousal maintenance payments" necessarily contemplates only those forms of "spousal maintenance payments" governed by the act, not to contractual alimony previously permitted under Texas law.

**Whether chapter 8 applies here**

Randy contends that even if contractual alimony is not always governed by chapter 8, the language of the decree here and his agreement incident to divorce with Cherie brings his spousal support obligation within chapter 8. He relies principally upon *In re Taylor*, 130 S.W.3d 448 (Tex. App.—Texarkana 2004, orig. proceeding).

In *Taylor*, the underlying decree stated that "the parties have agreed to contractual maintenance" and that the relator "contracts to pay and is ordered to pay as maintenance the sum of $950.00 per month" to his ex-wife. *Id.* at 449. Relator subsequently failed to make these payments and was confined under an order of contempt under section 8.059 for failing to pay a total amount of $16,624.00. *Id.* Relator sought a writ of habeas corpus contending that he could not be held in contempt under section 8.059 because his underlying obligation was to pay agreed-to alimony, not court-ordered maintenance. *Id.* He relied upon *In re Dupree*, in which the Dallas Court of Appeals held that a contractual alimony obligation could not be enforced by contempt under section 8.059. 118 S.W.3d 911, 916 (Tex. App.—Dallas 2003, orig. proceeding). The Dallas court relied on (1) the divorce decree's description of Dupree's obligation as "contractual alimony"; and (2) the absence

11

of decretal language ordering Dupree to make the alimony payments. *Id.* at 915-16. In *Taylor*, the Texarkana court distinguished *Dupree*: "the decree speaks of contractual maintenance rather than alimony, and it clearly contains decretal language by the trial court ordering Relator to pay a sum certain. Thus, it is not merely an agreement of the parties, but an order of the court." *Taylor*, 130 S.W.3d at 449-50.

We consider whether the agreement incident to divorce and the decree here are more akin to those in *Taylor* or those in *Dupree*.

### The parties' intent to be governed by chapter 8

Randy argues that the agreement incident to divorce manifests the parties' intent for his spousal support obligation to be governed by chapter 8 rather than contract law. We conclude otherwise, as a matter of law.

Absent ambiguity—which we do not find here—the construction of a contract is a question of law for the court. *Buys v. Buys*, 924 S.W.2d 369, 372 (Tex. 1996). We examine the entire document and consider each part with every other part so that the effect and meaning of one part on any other part may be determined. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996); *Steeger v. Beard Drilling Co.*, 371 S.W.2d 684, 688 (Tex. 1963). We interpret the contract by ascertaining the true objective intentions of the parties, based on the contract language. *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005). We presume that the parties to a contract intend every clause to have some effect. *Heritage Res.*, 939 S.W.2d at 121; *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 331 (Tex. 1983). We give words their plain, common, or

12

generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense. *Heritage Res.*, 939 S.W.2d at 121.

The agreement manifests no intent that Randy's alimony obligation be governed by chapter 8 of the family code. It begins by stating, "To the extent permitted by law, the parties stipulate that this agreement is enforceable as a contract." Then paragraph 2 specifies that Randy's payments to Cherie are "intended to qualify as *contractual alimony* as that term is defined in section 71(a) of the Internal Revenue Code of 1986." (emphasis added).

Nowhere does the agreement reference "maintenance" or chapter 8 of the family code. In fact, the only reference to the family code in the agreement is in paragraph 8, which states that the "agreement is made in accordance with section 7.006 of the Texas Family Code." Section 7.006 provides for agreements incident to divorce:

(a) To promote amicable settlement of disputes in a suit for divorce or annulment, the spouses may enter into a written agreement concerning the division of the property and the liabilities of the spouses and maintenance of either spouse. The agreement may be revised or repudiated before rendition of the divorce or annulment unless the agreement is binding under another rule of law.

(b) If the court finds that the terms of the written agreement in a divorce or annulment are just and right, those terms are binding on the court. If the court approves the agreement, the court may set forth the agreement in full or incorporate the agreement by reference in the final decree.

Tex. Fam. Code Ann. § 7.006 (West 2006).

Randy's agreed alimony obligation also would have violated chapter 8 from its inception. Contrary to section 8.054, it allows for alimony payments over a period of ten years. *See*

13

*id.* § 8.054. In violation of section 8.055, it provides for monthly alimony payments in the amount of $5,000 per month. *See id.* § 8.055.

These features of the agreement convince us that the parties intended to create the sort of contractual alimony obligation that is permitted outside of the context of chapter 8, not a maintenance obligation governed under that chapter.

In contending otherwise, Randy points to paragraph 19 of the agreement, which contemplates judicial modification or termination of the agreement:

> If either party seeks a modification of this agreement by equitable bill of review and the initiating party fails to succeed in setting aside this agreement, the initiating party will be liable to the defending party for any costs, attorney's fees, consultant's fees, appraisal fees, and any other expenses incurred in defending the action.

Relying on *In re Lendman*, 170 S.W.3d 894 (Tex. App.—Texarkana 2005, no pet.), Randy asserts that an equitable bill of review is available to modify or set aside "agreed to" maintenance payments pursuant to section 8.057. We conclude that *Lendman* is inapplicable to this case. In *Lendman*, there was no contractual alimony agreement at issue. Instead, the dispute involved a divorce judgment that had been amended by agreement, increasing the child support payment and changing portions of the maintenance order. *Id.* at 896. The husband filed a motion to modify the maintenance order, alleging that the trial court had exceeded its statutory authorization in entering the order. *Id.* Citing to section 8.057 of the family code, the appellate court held that the "continuation of spousal maintenance is subject to a motion to modify on a showing of a material change of circumstances of either party affected by the maintenance order." *Id.* at 899.

14

Simply because the agreement here may be modified pursuant to an equitable bill of review does not mean it may be modified under section 8.057 of the family code. The issue in this case is not whether the agreement may be modified but whether the parties contemplated modification of their agreement under chapter 8 of the family code. If the parties had intended for the agreement to be governed by section 8.057 or any other provision in chapter 8 of the family code, they could have written language to that effect into the contract. They did not.

### Decretal language

The divorce decree here is also more similar to that in *Dupree* than that in *Taylor*. The decree incorporated the agreement incident to divorce:

> The Court finds that the parties have entered into an Agreement Incident to Divorce, in a document separate from this Final Decree of Divorce. The Court approves the agreement and incorporates it by reference as part of this decree as if it were recited herein verbatim and orders the parties to do all things necessary to effectuate the agreement. A copy of the agreement is filed with the records of this Court.

While acknowledging that this decretal language, unlike *Taylor*'s, does not specify the terms and amount of his obligation, Randy contends that, because the district court *ordered* the parties to do all things necessary to effectuate the agreement, this "decretal" language transformed the contractual alimony payments into court-ordered maintenance payments. We disagree.

The district court's use of the word "order" is not alone dispositive. "Courts should not give conclusive effect to the judgment's use or omission of commonly employed decretal words, but should instead determine what the trial court adjudicated from a fair reading of all the judgment's provisions." *Wilde v. Murchie*, 949 S.W.2d 331, 332 (Tex. 1997). "Like other judgments, courts

15

are to construe divorce decrees as a whole toward the end of harmonizing and giving effect to all that is written." *Id*.

Moreover, the language the parties used in their agreement is virtually identical to the language used in *Dupree*. Under the heading "Contractual Alimony," the *Dupree* decree provided:

> It is the mutual desire of the parties to provide a continuing measure of support for ROBIN ANN DUPREE, Receiving Party, after divorce. These support payments undertaken by GORDON GIPP DUPREE, Paying Party, are intended to qualify as contractual alimony as that term is defined in . . . [the Internal Revenue Code] . . . . All provisions of this article will be interpreted in a manner consistent with that intention.

*Dupree*, 118 S.W.3d at 913.

With the exception of the names of the parties, the above language is identical to the language in paragraph 2 of the agreement incident to divorce in this case, which the district court incorporated by reference into the divorce decree:

> It is the mutual desire of the parties to provide a continuing measure of support for CHERIE A. McCOLLOUGH, Receiving Party, after divorce. These support payments undertaken by RANDY F. McCOLLOUGH, Paying Party, are intended to qualify as contractual alimony as that term is defined in . . . [the Internal Revenue Code] . . . . All provisions of this article will be interpreted in a manner consistent with that intention.

The court in *Dupree* wrote:

> The divorce decree specifically describes Dupree's obligation as "contractual alimony." Nothing in the provisions for "contractual alimony" refers to the spousal maintenance provisions of chapter 8 of the family code. The only statutory reference is to the definition of "contractual alimony" pursuant to the Internal Revenue Code. There are no references to Fair's eligibility for maintenance or the factors considered

16

in determining nature, amount, duration, and manner of payments, pursuant to chapter 8. . . .

Thus, we agree with Dupree that the contractual alimony provided for in the divorce decree is an agreement pursuant to section 7.006 of the family code, and, therefore, it is considered a contract. We further conclude that the parties' contractual alimony agreement was not an agreement for spousal maintenance made pursuant to chapter 8 of the family code.

*Id*. at 915-16 (internal citations omitted)

We similarly conclude that the agreement incident to divorce in this case is governed by contract law and not chapter 8 of the family code. The fact that a court expressly approves such an agreement and incorporates it into the final divorce decree does not transform contractual alimony payments into court-ordered maintenance payments subject to the termination and modification provisions of chapter 8 of the family code. *See Cardwell*, 978 S.W.2d at 724; *see also McGoodwin v. McGoodwin,* 671 S.W.2d 880, 882 (Tex. 1984) ("Such an agreement, though incorporated into a final divorce decree, is treated as a contract, and its legal force and its meaning are governed by the law of contracts, not by the law of judgments."); *Woolam v. Tussing*, 54 S.W.3d 442, 449 (Tex. App.—Corpus Christi 2001, no pet.) ("A provision in a divorce decree ordering payment of support to a former spouse may be enforced as a contractual obligation.").

**CONCLUSION**

Because we conclude that, as a matter of law, the termination and modification provisions of chapter 8 do not apply to Randy's alimony obligation here, we uphold the district court's summary judgment on that basis. *See Texas Workers' Comp. Comm'n v. Patient Advocates,* 136 S.W.3d 643, 648 (Tex. 2004); *Star-Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex. 1995);

*Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *Tana Oil & Gas Corp. v. Cernosek*, 188 S.W.3d 354, 359 (Tex. App.—Austin 2006, pet. denied).  We overrule Randy's issues on appeal, and affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed:   August 25, 2006