# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00013-CV

### Michael L. Marin, Appellant

### v.

### Jenifer L. Marin, Appellee

### FROM THE 201ST DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-FM-21-001848, THE HONORABLE MADELEINE CONNOR, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Michael L. Marin appeals from the trial court's final decree of divorce. In three issues, Michael challenges the trial court's award of spousal maintenance to Jenifer L. Marin and its determination that the community estate was entitled to reimbursement of $137,641 for the enhancement of the value of Michael's separate property.[1] We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Michael and Jenifer were married in August 2009. They have two children who were minors when the divorce decree was signed. Additionally, Michael has two children from a previous marriage who were minors when Michael and Jenifer married. In the decree, Jenifer

---

[1] Because the parties share a surname, for clarity we refer to them by their given names.

[2] Because the parties are familiar with the facts of the case, its procedural history, and the evidence adduced at trial, we do not recite them in this opinion except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4.

was named the conservator with the right to designate their minor children's residence. Michael does not challenge any of the child-custody or child-support orders.

At the time of the divorce, Michael was a partner at a law firm in Austin. Jenifer, who was also a lawyer though not licensed to practice in Texas, did not work outside the home at all during the marriage and was principally engaged with caring for the four children.[3] Michael, Jenifer, and the children lived in a house Michael had purchased before he and Jenifer married. The evidence at trial showed that Michael controlled the parties' finances during the marriage.

Michael initially filed a petition for divorce in January 2021 but nonsuited it shortly thereafter. He filed a second petition for divorce on April 1, 2021. The trial judge held a three-day bench trial in October 2021. The court granted the divorce on the ground of insupportability, found that Jenifer should receive a disproportionate division of the community estate, and ordered Michael to pay Jenifer spousal maintenance of $2,500 per month for four years. Michael perfected this appeal challenging the court's award of spousal maintenance and its adjudication of Jenifer's claim for reimbursement to the community estate against Michael's separate estate.

## DISCUSSION

### *Spousal Maintenance Award*

Michael challenges the trial court's spousal-maintenance award ordering him to pay Jenifer $2,500 per month for four years. He asserts that the trial court abused its discretion by ordering any spousal maintenance because there was "no evidence of the statutory predicates for spousal maintenance." We review a trial court's award of spousal maintenance for an abuse

---

[3] Michael and the mother of his two daughters divorced in 2005. In 2009, Michael became the "primary caregiver" for his daughters, and they lived with Michael and Jenifer.

of discretion. *Kelly v. Kelly*, 634 S.W.3d 355, 364 (Tex. App.—Houston [1st Dist.] 2021, no pet.). Thus, we will not disturb an order awarding spousal maintenance unless the trial court acts arbitrarily, unreasonably, without regard to guiding rules and principles, or without supporting evidence. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *In re Fuentes*, 506 S.W.3d 586, 593 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding). When considering whether the trial court abused its discretion, "legal and factual sufficiency of the evidence are not independent grounds for asserting error, but they are relevant factors" in our assessment. *Dunn v. Dunn*, 177 S.W.3d 393, 396 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *see also Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied). There is no abuse of discretion if some evidence of a substantive and probative character exists to support the trial court's decision. *Stamper v. Knox*, 254 S.W.3d 537, 542 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Because of the overlap between the abuse-of-discretion and sufficiency-of-the-evidence standards of review, courts apply a hybrid analysis, engaging in a two-pronged inquiry to determine whether the trial court (1) had sufficient information on which to exercise its discretion and (2) erred in its application of that discretion. *Zeifman*, 212 S.W.3d at 588.

We conduct a traditional sufficiency review to answer the first question, applying the familiar standards for determining the legal and factual sufficiency of the evidence. Jenifer bore the burden of proof on her spousal-maintenance claim. *See, e.g.*, *Peck v. Peck*, No. 03-14-00440-CV, 2016 WL 3917131, at *3 n.16 (Tex. App.—Austin July 15, 2016, no pet.) (mem. op.) (citing *Cooper v. Cooper*, 176 S.W.3d 62, 65 (Tex. App.—Houston [1st Dis.] 2004, no pet.)). Consequently, in attacking the legal sufficiency of the evidence supporting the trial court's determination of Jenifer's spousal-maintenance claim, Michael must demonstrate on appeal that there is no evidence to support the adverse findings. *See Zeifman*, 212 S.W.3d at 588 (citing

3

*Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983)). We analyze whether the evidence would enable reasonable people to reach the judgment being reviewed, crediting evidence favorable to the findings if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). We consider the evidence in the light most favorable to the findings and indulge every reasonable inference that would support them. *City of Keller*, 168 S.W.3d at 822.

Under the legal sufficiency standard, we defer to the reasonable credibility determinations made by the factfinder—here, the trial court—and do not merely substitute our judgment for that of the factfinder. *See id.* at 816-17, 819-20, 822. The factfinder "is the sole judge of the credibility of witnesses and the weight to be given to their testimony." *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). If we conclude in answer to the first question that the trial court had sufficient information on which to exercise its discretion, then to answer the second question we determine whether the trial court made a reasonable decision based on the evidence, "that is, that the court's decision was neither arbitrary nor unreasonable." *Zeifman*, 212 S.W.3d at 588.

Family Code Chapter 8 governs the award of spousal maintenance in a divorce decree. *See* Tex. Fam. Code §§ 8.001–.359; *Dalton v. Dalton*, 551 S.W.3d 126, 130 (Tex. 2018) ("In 1995, the Texas Legislature first authorized courts to award a form of involuntary post-divorce alimony referred to as 'spousal maintenance.'"). The Family Code defines "maintenance" as "an award in a suit for dissolution of a marriage of periodic payments from the future income of one spouse for the support of the other spouse." Tex. Fam. Code § 8.001(1). "The legislative purpose in enacting provisions for spousal maintenance was to provide temporary and rehabilitative support for a spouse whose ability for self-support is lacking or has deteriorated

4

over time while engaged in homemaking activities and whose capital assets are insufficient to provide support." *O'Carolan v. Hopper*, 71 S.W.3d 529, 533 (Tex. App.—Austin 2002, no pet.).

The Family Code authorizes trial courts to award spousal maintenance "only under 'very narrow' and 'very limited circumstances'" and only if the parties meet certain eligibility requirements. *Dalton*, 551 S.W.3d at 130 (quoting *McCollough v. McCollough*, 212 S.W.3d 638, 645 (Tex. App.—Austin 2006, no pet.)); *see also* Tex. Fam. Code § 8.051. In this case, Jenifer sought maintenance under Section 8.051(2)(B), which provides in relevant part:

> [T]he court may order maintenance for either spouse only if the spouse seeking maintenance will lack sufficient property, including the spouse's separate property, on dissolution of the marriage to provide for the spouse's minimum reasonable needs and:
>
> ….
>
> (2) the spouse seeking maintenance:
>
> ….
>
> (B) has been married to the other spouse for 10 years or longer and lacks the ability to earn sufficient income to provide for the spouse's minimum reasonable needs. . . . .

Tex. Fam. Code § 8.051(2)(B) (eligibility for spousal maintenance). The parties do not dispute that Michael and Jenifer were married for 10 years or longer. There was legally and factually sufficient evidence at trial to support a finding that Jenifer lacked the ability to earn sufficient income to provide for her minimum reasonable needs, and Michael does not challenge that determination on appeal.

In his first issue, Michael asserts that the trial court abused its discretion in awarding Jenifer spousal maintenance because she "did not prove the statutory predicates for an award of spousal support." Michael maintains that to be eligible for an award of spousal

5

maintenance, Jenifer was required to rebut a presumption that spousal maintenance is not warranted and, relatedly, that the only way Jenifer could rebut the presumption was to offer legally sufficient evidence that she had exercised diligence in earning sufficient income to provide for her minimum reasonable needs or that she had exercised diligence in developing the necessary skills to provide for her minimum reasonable needs during the period of separation and during the time the suit for dissolution of the marriage was pending.

The Family Code provides that unless the spouse seeking maintenance pursuant to section 8.051(2)(B) has "exercised diligence in (1) earning sufficient income to provide for the spouse's minimum reasonable needs; or (2) developing the necessary skills to provide for the spouse's minimum reasonable needs during a period of separation and during the time the suit for dissolution of the marriage is pending," there is a rebuttable presumption that maintenance is not warranted. *Id.* § 8.053(a). Thus, even when a spouse meets the eligibility requirements for an award of spousal maintenance under section 8.051(2)(B), if the spouse fails to demonstrate that she exercised diligence in one of the two ways provided for in section 8.053(a), she must rebut a presumption that maintenance is not warranted. *See Peck*, 2016 WL 3917131, at *1 n.7 ("With respect to [Family Code section 8.051(2)] Paragraph (B), there is a rebuttable presumption that maintenance is not warranted unless the spouse seeking maintenance has 'exercised diligence' in either 'earning sufficient income to provide for the spouse's minimum reasonable needs' or 'developing the necessary skills to provide for the spouse's minimum reasonable needs during a period of separation and during the time the suit for dissolution of the marriage is pending.'"). We first consider whether there was legally sufficient evidence presented at trial to support a finding that Jenifer exercised diligence in earning sufficient income to provide for her minimum reasonable needs. *See* Tex. Fam. Code § 8.053(a)(1). The diligence

6

inquiry under this section of the Family Code is not limited to the period of separation and the time the suit for dissolution of the marriage is pending. *See Debrock v. Debrock*, No. 03-21-00308-CV, 2022 WL 17970214, at \*5 (Tex. App.—Austin Dec. 28, 2022, pet. filed) (mem. op.) (citing *Day v. Day*, 452 S.W.3d 430, 434 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (comparing Family Code section 8.053(a)(1) with section 8.053(a)(2))).

At trial, Jenifer testified that in October 2020 she took and passed a course required to obtain a license to sell real estate in North Carolina.[4] After finishing the first course, Jenifer took the first of three additional courses and had registered for the second and third courses. She was scheduled to complete the second and third courses in December 2021. Obtaining a North Carolina real-estate license would reduce the number of courses she would be required to take to obtain a license to sell real estate in Texas if she chose to remain in the state. Jenifer testified that taking these courses would set her up for taking the Texas real estate exam in January 2022. Jenifer testified that she had reactivated her license to practice law in the District of Columbia, which had required that she take an ethics course. Jenifer met with a career counselor, was working on her resume, and had explored educational opportunities for alternative careers. This evidence is legally sufficient to support a finding that Jenifer exercised diligence in earning sufficient income to provide for her minimum reasonable needs. *See Slicker v. Slicker*, 464 S.W.3d 850, 863 (Tex. App.—Dallas 2015, no pet.) (reasonable diligence demonstrated by spouse who conducted job search, took one computer class and planned to take another, had sent resume to one potential employer, and had worked for a short period of time).

---

[4] Jenifer was raised in North Carolina, her parents reside there, and she wanted to return there after the divorce.

7

Even when there is legally insufficient evidence to support a finding of reasonable diligence, however, the lack of such evidence simply gives rise to a rebuttable presumption that spousal maintenance is not warranted. *See* Tex. Fam. Code § 8.053(a) (presumption that spousal maintenance is not warranted arises when spouse seeking maintenance has failed to exercise diligence in either earning sufficient income or developing necessary skills to provide for minimum reasonable needs).[5]  This presumption is subject to the same rules governing presumptions generally.  Its effect is to shift the burden of producing evidence to the party against whom it operates. *See General Motors Corp. v. Saenz*, 873 S.W.2d 353, 359 (Tex. 1993).  Once that burden is discharged and evidence contradicting the presumption has been offered, the presumption disappears and "is not to be weighed or treated as evidence." *Id.* (quoting *Combined Am. Ins. Co. v. Blanton*, 353 S.W.2d 847, 849 (Tex. 1962)).  "A presumption is nothing more than a rule for the guidance of a trial judge in locating the burden of production at a particular time." *Texas A & M Univ. v. Chambers*, 31 S.W.3d 780, 784 (Tex. App.—Austin 2000, pet. denied).  Thus, the effect of a failure to present evidence supporting a finding of reasonable diligence is that the party seeking spousal maintenance has the burden of producing evidence that contradicts the presumption that such spousal maintenance is not warranted.

Our review of the evidence is informed by the legislative purpose in enacting provisions for spousal maintenance, which was to provide temporary and rehabilitative support for a spouse whose ability to support herself is lacking or has deteriorated over time while the spouse was engaged in homemaking activities and whose capital assets are insufficient to provide support. *See O'Carolan*, 71 S.W.3d at 533.  At trial, Jenifer testified that while she and

---

[5]  Section 8.053 sets forth the conditions under which a rebuttable presumption arises. *See* Tex. Fam. Code § 8.053.  It does not, however, define or circumscribe what type of evidence is required to overcome that presumption.

8

Michael were married, she stayed at home and took care of their two children as well as his two children from a prior marriage. There was evidence that Jenifer's role as primary caretaker of the children facilitated Michael's pursuit of his successful and lucrative legal career. At the time of the divorce, Jenifer was 47 years old and had not worked in more than ten years. She testified that she currently lacked the qualifications to practice law in Texas or to work as a real estate agent. Jenifer testified that she could not get a pre-approval letter from any mortgage lender unless she received child support and spousal maintenance. She also testified that she did not independently have sufficient capital to purchase a house or pay rent for a suitable place in Austin for her and the children. Jenifer's financial planner testified that even assuming Jenifer obtained a job with a $60,000 yearly salary she would likely deplete her resources in fifteen years. We conclude that the trial court could have determined that evidence of Jenifer's long absence from the work force due to her homemaking activities, her inability to secure employment that would cover her household expenses without additional education or certifications, and her inability to provide for her minimum reasonable needs would overcome a presumption against spousal maintenance. *See Debrock*, 2022 WL 17970214, at *6 (lack of education and employment experience combined with diminished ability to provide for minimum reasonable needs overcame presumption against spousal maintenance); *Slicker*, 464 S.W.3d at 863 (evidence of spouse's long period of time not working outside home and lack of specific education or employment skills that would facilitate job search supported finding that wife was eligible to receive spousal maintenance). Accordingly, we hold that the trial court did not abuse its discretion in awarding Jenifer spousal maintenance. We overrule Michael's first issue.

9

*Reimbursement Claim*

In his second issue, Michael challenges the legal sufficiency of the evidence supporting the trial court's finding that the community estate had a right of reimbursement in the amount of $137,641 for improvements made to the Austin home in which he and Jenifer lived, which was Michael's separate property. Michael asserts that the trial court abused its discretion in its award of Jenifer's reimbursement claim because there was no evidence of the value of the improvements made to his separate property. Section 3.402 of the Family Code authorizes reimbursement claims between marital estates for capital improvements to property and directs courts to resolve a claim for reimbursement using equitable principles. *See* Tex. Fam. Code § 3.402(a)(8), (b). We review a trial court's award of reimbursement under an abuse of discretion standard. *In re Estate of Baker*, 627 S.W.3d 523, 526–27 (Tex. App.—Waco 2021, no pet.). If some evidence supports the trial court's decision, there is no abuse of discretion. *Ayala v. Ayala*, 387 S.W.3d 721, 726 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Great latitude must be given to the trial court in applying equitable principles to a claim for reimbursement. *Penick v. Penick*, 783 S.W.2d 194, 198 (Tex. 1988). An equitable claim for reimbursement is not merely a balancing of the ledgers between the marital estates. *Id.* The discretion to be exercised in evaluating a claim for reimbursement is equally as broad as that discretion subsequently exercised by the trial court in making a "just and right" division of the community property. *Id.* However, a trial court abuses its discretion if it acts in an arbitrary or unreasonable manner. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). The legal sufficiency of the evidence is a relevant factor in assessing whether the trial court abused its discretion. *In re Marriage of McCoy*, 488 S.W.3d 430, 433 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

10

The rule of reimbursement is purely an equitable one. *Vallone v. Vallone*, 644 S.W.2d 455, 458 (Tex. 1982). A right of reimbursement arises when funds of one estate, here the community estate, are used to benefit another estate, here Michael's separate estate, without itself receiving some benefit. *Id.* at 459. "The right of reimbursement is not an interest in property or an enforceable debt, per se, but an equitable right which arises upon dissolution of the marriage through death, divorce, or annulment." *Id.* at 458–59. The spouse seeking reimbursement must establish the following: (1) that a contribution was made by one marital estate to another, (2) that the contribution was reimbursable, and (3) the value of the contribution. *Id.* On appeal, Michael challenges only the third element—the value of the contribution. A claim for reimbursement for funds expended by an estate for improvements to another estate is to be measured by the enhancement in value to the benefitted estate by reason of the improvements. *Anderson v. Gilliland*, 684 S.W.2d 673, 675 (Tex. 1985). Evidence showing the value of the property without improvements and the value of the property with improvements is sufficient to sustain a finding as to the amount of the enhancement value. *See In re Marriage of McCoy*, 488 S.W.3d at 435. The enhancement value is determined by presenting evidence that shows and compares the fair market value of the property in its improved condition, at the time of the dissolution, with what the fair market value of the property would have been on the date of the dissolution if the improvements had not been made:

> The enhanced value from the improvements made is calculated under the following formula. First, the fair market value of the property in its improved condition is determined as of the date of the dissolution of the marital relationship. Then, a determination is made as to what the fair market value of the property would have been at the date of the dissolution had the improvements not been present on the property. The difference between these two value calculations is the amount of the reimbursement claim.

11

*Id.* (quoting 38 Aloysius A. Leopold, Texas Practice Series: Marital Property and Homesteads § 14.6 (1993)).

At trial, the court heard evidence about the value of the residence from Michael Benaglio. Benaglio stated that he had assessed the enhanced value of property for purposes of reimbursement claims 120 to 140 times and always used the same methodology. Benaglio testified that improvements to Michael and Jenifer's residence made in 2012 added 218 square feet of living space. The improvement was the enclosure of a screened porch to create additional living space. Benaglio reviewed two third-party appraisals done by licensed real estate appraisers that valued the property at $980,000 and $2,400,000 respectively. Benaglio also reviewed a 2021 appraisal done by Keller Williams that valued the property at $1,150,000. Using these appraisals, Benaglio testified that the enhancement value of the enclosed screen porch ranged from $59,450 to $150,700. Benaglio testified that he arrived at this range by dividing the lowest appraisal and the highest appraisal by the total square footage of the residence to arrive at a per-square-foot value and then multiplied that value by the square footage added to the house by the enclosed screen porch. Benaglio agreed with Michael's counsel that in the "real estate world" people typically do not delineate the value of the improved structure versus the value of the lot it is on but, rather, value the entire improved property as a whole. Benaglio testified that the appraisals he reviewed did not value the land and the structure separately. The trial court found that the community had enhanced the value of Michael's separate property by $137,641, an amount within the range of values to which Benaglio testified. The evidence presented by Benaglio is sufficient to sustain the trial court's finding as to the amount of the enhancement value.

On appeal, Michael argues that the evidence is legally insufficient to support the trial court's finding because there was no evidence of the value of the property in 2012, immediately before the improvement at issue was made. Michael argues that Benaglio's testimony has no probative value because he did not provide the trial court with a value of the property "before the porch was enclosed in 2012." As previously noted, however, the proper measure of the enhancement value is the difference between the property with and without the improvement at the time of the dissolution of the marriage. *See In re Marriage of McCoy*, 488 S.W.3d at 435. Using fair market values assigned to the property by third-party appraisers in 2021, Benaglio provided his opinion of how much less the house would be worth if it was 218 square feet smaller, i.e., without—or before—the 2012 improvements. Michael also argues that the methodology Benaglio used was incorrect, and that he should have valued the land and the structure separately when making his calculations. Although that could be an alternative methodology for calculating the enhancement value, Michael points to no authority mandating that it be used. Courts consistently require only that court's finding be supported by evidence of the fair market value of the property with and without the improvements. Moreover, Michael did not present any evidence of what the enhancement value would be using the alternative methodology he advocated. Benaglio testified that he had done more than 100 valuations for reimbursement claims using his methodology and that it is the method appraisers typically use when valuing real property. We conclude that the trial court's finding in valuing Jenifer's reimbursement claim was a proper exercise of its broad discretion and fell within the great latitude given to apply equitable principles. *See In re Marriage of Wells*, No. 12-21-00152-CV,

13

2022 WL 3724724, at \*2 (Tex. App.—Tyler Aug. 30, 2022, no pet.) (mem. op.). We overrule

Michael's second issue.[6]

## CONCLUSION

Having overruled Michael's issues, we affirm the divorce decree.

_____

J. Woodfin Jones, Justice

Before Justices Baker, Smith, and Jones\*

Affirmed

Filed: April 5, 2023

\*Before J. Woodfin Jones, Chief Justice (Retired), Third Court of Appeals, sitting by assignment. _See_ Tex. Gov't Code § 74.003(b).

---

[6] Because of our disposition of Michael's second issue, we need not address his third issue in which he asserts that the trial court's abuse of discretion in granting Jenifer's reimbursement claim had more than a de minimus effect on the trial court's division of the community estate such that remand was warranted. _See_ Tex. R. App. P. 47.1.