

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00307-CV

———————————————

NORBERT BOLDA, Appellant

V.

CLIVALLER BOLDA, Appellee

---

On Appeal from the 367th District Court
Denton County, Texas
Trial Court No. 15-10814-367

---

Before Kerr, Birdwell, and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

This appeal is taken from the trial court's order denying Appellant Norbert Bolda's petition to modify or terminate a spousal-maintenance order, which requires Norbert to, inter alia, pay his ex-wife, Appellee Clivaller Bolda, $1,600 each month. Norbert raises two issues, contending that the trial court abused its discretion because there was insufficient evidence to support the trial court's finding that no material and substantial change had occurred since the divorce decree and asserting that the trial court erred by failing to modify the amount of spousal maintenance because it exceeded the statutory cap based on Norbert's current gross monthly income. We will affirm.

### II. BACKGROUND

Norbert filed an original petition for divorce at the end of 2015. In May 2016, Norbert and Clivaller entered into a mediated settlement agreement (MSA). The MSA was filed and appears in the clerk's record. Its third section contains the following provision in all capital letters, bolded, and underlined:

> **THIS AGREEMENT IS NOT SUBJECT TO REVOCATION:**
>
> **THIS AGREEMENT SHALL BE BINDING ON THE PARTIES AND SHALL NOT BE SUBJECT TO REVOCATION. THE PARTIES SHALL BE ENTITLED TO A JUDGMENT ON THE MEDIATED SETTLEMENT AGREEMENT NOTWITHSTANDING RULE 11, TEXAS RULES OF CIVIL PROCEDURE OR ANY OTHER RULE OF LAW.**

**EACH PARTY SPECIFICALLY STIPULATES AND AGREES THAT THEY HAVE ENTERED INTO THIS AGREEMENT FREELY AND VOLUNTARILY. THIS AGREEMENT IS NOT SUBJECT TO REVOCATION AND IS ENFORCEABLE AS A CONTRACT.**

The MSA contained the following relevant stipulations:

Wife is awarded $130,000 from Husband's 401k savings plan . . . [;]

Husband is awarded the balance of the 401k savings plan . . . [;]

Husband agrees to carry a life insurance policy in the amount of $100,000 with Wife as a beneficiary for so long as he is obligated to pay spousal maintenance[; and]

Husband agrees to pay spousal maintenance, pursuant to Chapter 8 of the Texas Family Code, Section 8.051(2)(A), in the amount of $1[,]600 per month for a period of 10 years with the first payment due on September 1, 2016. Payments will be the subject of wage withholding.

On July 7, 2016, the trial court signed a final decree of divorce. With respect to

the MSA, the final decree provided as follows:

The agreements in this Final Decree of Divorce were reached in mediation with [Mediator] on May 27, 2016. This Final Decree of Divorce is stipulated to represent a merger of a[n] [MSA] between the parties. To the extent there exist any differences between the [MSA] and this Final Decree of Divorce, this Final Decree of Divorce shall control in all instances.

The final decree included a finding that Clivaller was entitled to court-ordered

spousal maintenance pursuant to section 8.051(2)(A) of the family code.[1] The final

---

[1] *See* Tex. Fam. Code Ann. § 8.051(2)(A) (providing that the court may order maintenance for either spouse only if the spouse seeking maintenance will lack sufficient property, including the spouse's separate property, on dissolution of the

3

decree ordered Norbert to make monthly payments to Clivaller of $1,600 for 120 months, totaling $192,000. Norbert was also ordered to maintain a $100,000 life insurance policy for as long as he is obligated to pay spousal maintenance.[2]

Subsequently, Norbert filed a suit to enforce the property division, in which he alleged that Clivaller had altered the condition of the parties' home in violation of the divorce decree. The enforcement suit resulted in a $20,000 judgment in favor of Norbert with the judgment to be recovered by offsetting the amount of Norbert's spousal maintenance obligation. Thus, Norbert's monthly spousal maintenance payment was reduced from $1,600 to $600 for twenty months, with the $1,600 monthly payments to resume on September 1, 2018.

On May 11, 2018, Norbert filed a petition to modify or terminate the spousal maintenance order. The case proceeded to a bench trial where Norbert was represented by counsel and Clivaller represented herself. Norbert testified that at the time of the divorce decree, his salary was $145,000 but that almost immediately after the divorce, his position was eliminated and he was out of work until September 2016, when he obtained employment earning a yearly salary of $99,000. Norbert explained that his salary structure in his new job changed from salary-based to commission-

marriage to provide for the spouse's minimum reasonable needs, and the spouse seeking maintenance is unable to earn sufficient income to provide for the spouse's minimum reasonable needs because of an incapacitating physical or mental disability).

[2]The final decree also divided Norbert's retirement account, with Clivaller receiving $130,000 and Norbert receiving the remaining balance ($12,000).

4

based, which required him to look for another job. While Norbert averred that he did obtain yet another job, the new position "included a lot of labor to do the job as well as selling, and I just became unable to do the -- the job at that time." Norbert testified he currently did not have a job because "[m]y body won't allow it." Norbert later explained that he suffers from multifocal neuropathy with conduction block syndrome, which is a progressive disease that will ultimately confine him to a wheelchair.

The evidence at the final hearing included a letter from the Social Security Administration, dated August 29, 2018, which stated that Norbert received $2,497.50 per month in Social Security benefits.[3] Norbert testified that the Social Security Administration found him to be disabled on February 6, 2017, and that he began receiving benefits in September 2017. According to Norbert, the $2,497.50 per month is his only source of income. He testified that he had no savings, no medical insurance, and no dental insurance. Norbert explained that his $142,000 retirement

---

[3]According to Norbert, he printed out the letter, dated one day before the hearing, from "socialsecurity.gov website." The letter consists of one and a half pages and states, "Beginning August 2018, the full monthly Social Security benefit before any deductions is $2,497.50[,]" and "[t]he regular monthly Social Security payment is $2,497.00." The only mention of disability benefits is in one sentence in the letter, wherein it states, "You are entitled to monthly disability benefits." There is no statement in the letter regarding whether the $2,497.50 is for disability benefits, whether the Social Security Administration determined Norbert is entitled to benefits, or how any such determination of benefits was made. No additional exhibits were offered or admitted regarding any determination from the Social Security Administration regarding Norbert's disability.

account had been divided in the divorce decree, with his ex-wife getting $130,000 and Norbert receiving $12,000. Norbert testified that none of the $12,000 was left.

Another exhibit was a financial information statement, prepared by Norbert, that listed his monthly living expenses—itemized for housing, transportation, food, insurance, medical expenses, personal expenses, and debt payments—totaling $2,898. Based on his monthly Social Security income and his monthly expenses, Norbert testified that he does not have enough money to pay his bills every month or to pay spousal support. Norbert stated that he lives with his mother and that she is his primary caregiver.

On cross-examination, Norbert conceded that he had received $60,000 in severance pay when he lost his job in 2016. Norbert also acknowledged that although "it's more progressive than it was at the time that we were married," he has the same illness that he had at the time of the original divorce decree.

Clivaller testified that her current job managing an RV/mobile home park allows her to live at the park by paying less than "full rent."[4] However, Clivaller also testified that she does not have a job. Clivaller averred that she receives a disability check from the government each month in the amount of $706. Clivaller then testified that all of the money she received in the divorce decree was spent on buying a house, but that the house had been destroyed by Hurricane Harvey. She then

---

[4]Norbert introduced a print-out from a Facebook conversation involving Clivaller in which she stated that she lives "for free" at an RV/mobile home park because her boss said she is such a good worker.

moved into a camper where she lived before her son bought her a "little building." Clivaller explained that the tiny house was unfinished and that her son died before he could finish it out.

After both parties rested, the trial court asked Norbert and Clivaller some clarifying questions about their medical disabilities:

*THE COURT: (Overlapping)* Okay. Tell it to me in one sentence. Your disability is the lack of . . .

*[NORBERT]:* It's a muscle degenerative disease.

*THE COURT:* Okay. And what is your disability?

*[CLIVALLER]:* It was organic mental disorder.

*THE COURT:* Okay. And both of you understood this at the time of the divorce? Whether it was going to get worse or not, both of you had -- okay.

*[CLIVALLER]:* Yes, ma'am.

The trial court stated from the bench that it did not find a change in circumstances since the time of the divorce that would warrant a reduction or termination of spousal maintenance.

On September 17, 2018, the trial court signed an order denying Norbert's petition to modify or terminate maintenance. At Norbert's request, the trial court entered the following findings of fact and conclusion of law:

Finding of Fact

1. On May, 2018, [Norbert], filed a First Amended Petition to Modify or Terminate Maintenance Order. [Clivaller] filed a Response.

7

2. A Final hearing was held on August 30, 2018.

3. At the hearing, live, sworn testimony was received by the court.

4. At the end of the hearing, the Court orally announced that it denied [Norbert's] requested relief. On Sept. 17, 2018, the Court entered the Order on Petition to Modify or Terminate Maintenance Order.

Conclusion of Law

1. [Norbert] failed to prove a material and substantial change in circumstances, (including circumstances reflect[ing] the factors specified in Family Code section 8.052) relating to either party.

Norbert's appeal followed.

## III. STANDARD OF REVIEW

When reviewing a court's order from a request to modify or terminate spousal maintenance, our standard is an abuse of discretion. *Nesbitt v. Nesbitt*, No. 03-06-00025-CV, 2009 WL 1896074, at *2 (Tex. App.—Austin July 1, 2009, no pet.) (mem. op.). The test for abuse of discretion is whether the trial court acted arbitrarily or unreasonably, that is, without reference to guiding rules and principles. *See In re A.D.H.*, 979 S.W.2d 445, 446 (Tex. App.—Beaumont 1998, no pet.). A trial court also abuses its discretion by ruling without supporting evidence. *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012). But no abuse of discretion occurs when the trial court decides based on conflicting evidence, so long as some substantive and probative evidence supports its decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d

8

92, 97 (Tex. 2009); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (op. on reh'g).

Legal and factual sufficiency of the evidence, although not independent grounds for asserting error, are relevant factors in assessing whether the trial court abused its discretion. *See In re A.D.D.*, 30 S.W.3d 609, 614 (Tex. App.—Texarkana 2000, no pet.). Because we have a complete reporter's record before us, the trial court's findings of fact are not conclusive as to our review. *See Swanson v. Swanson*, 228 S.W.2d 156, 158 (Tex. 1950); *Mohnke v. Greenwood*, 915 S.W.2d 585, 589 (Tex. App.—Houston [14th Dist.] 1996, no writ); *Armstrong v. Armstrong*, 601 S.W.2d 724, 727 (Tex. App.—Beaumont 1980, writ ref'd n.r.e.).

## IV. NORBERT'S FIRST ISSUE

### A. Norbert's monthly obligation is contractual alimony and not court-ordered spousal maintenance.

In his first issue, Norbert argues that the trial court abused its discretion by failing to modify the spousal maintenance award because the evidence was legally and factually insufficient to support the trial court's finding of no material and substantial change.

While Clivaller contends that no such evidence of a material and substantial change has been established, we glean from her brief that Clivaller's primary contention is that the spousal maintenance award was agreed pursuant to the MSA and that the MSA expressly states that it is not subject to revocation:

9

According to Rule 11, Section 154.071 of the Texas Civil Practice and Remedies Code, and Sections 7.006 and 153[.]007 of the Texas Family Code, these statutory provisions clarify that the types of settlement agreements discussed in each of the statues [*sic*] are enforceable, just like any contract. Thus an irrevocable contract can not [*sic*] be modified as long as it complies with Rule 11 of the Texas Rules of Civil Procedure. The Appellant added no stipulations concerning his disability nor did he withdraw his consent before judgement [*sic*] was rendered on irrevocable agreement as Rule 11 states.

The Spousal Maintenance order came from irrevocable mediated settlement 3 years ago when Appellant drew up agreement an [*sic*] insisted the agreement be irrevocable to ensure spouse could not get more money later. Parties were put in separate rooms to protect Appellee from angry outburst.

This argument, although poorly presented, was also made to the trial court by

Clivaller:

Well, he said he was that disabled back then when he signed the paperwork, so it's like -- he didn't -- he -- he didn't note in the paperwork anywhere that should he become disabled or should he get some -- you know, get worse or something, that it could be done. *I was under the understanding that it was irrevocable* and I didn't have to worry about supporting myself because I had a way to have support. [Emphasis added]

On cross-examination, Clivaller elicited testimony from Norbert to the same

effect:

*[CLIVALLER]* When you did the settlement, when we went to mediation in May of 2016, did you not make that settlement irrevocable so I could not get more funds in the future?

*[NORBERT]* It is my understanding at the time of mediation that the mediation agreement was irrevocable and could not be revoked until the order was signed by the Judge.

10

*[CLIVALLER]* So that mediation agreement is still in effect; it is irrevocable that you signed that you would pay this money for spousal maintenance?

*[NORBERT]* The order is still in effect.

Thus, in our view, the first consideration we must address is whether Norbert's spousal maintenance obligation is court-ordered spousal maintenance and thus governed by chapter 8 of the family code, or if it is contractual alimony and thus governed by the terms of the MSA.

**1.     Law concerning court-ordered spousal maintenance and contractual alimony**

Before 1995, the award of post-divorce alimony or spousal maintenance was held to be impermissible under the statutes and public policy of Texas. *Ex parte Casey*, 944 S.W.2d 18, 19 (Tex. App.—Houston [14th Dist.] 1997, pet. denied). But while the Supreme Court of Texas prohibited court-ordered alimony, it allowed parties to agree to such awards as a matter of contract. *See Francis v. Francis*, 412 S.W.2d 29, 31–33 (Tex. 1967).

In 1995, the legislature authorized courts to award post-divorce spousal maintenance, but strictly limited the circumstances under which they could do so. *See* Tex. Fam. Code Ann. §§ 8.001–.305. But the legislature authorized "maintenance" without altering the "well-established legal distinction between court-ordered alimony (which was held to be impermissible) and alimony by agreement (which, even when

11

incorporated into a divorce decree, was permitted)." *McCollough v. McCollough*, 212 S.W.3d 638, 645 (Tex. App.—Austin 2006, no pet.).

Indeed, whereas the availability and modification of court-ordered spousal maintenance are governed by chapter eight, chapter seven of the family code contains a section to encourage the amicable resolution of disputes in divorce proceedings through settlement agreements. *See* Tex. Fam. Code Ann. § 7.006. These agreements are binding on the parties and, even when incorporated into divorce decrees, are interpreted under general contract law. *Schwartz v. Schwartz*, 247 S.W.3d 804, 806 (Tex. App.—Dallas 2008, no pet.); *McCollough*, 212 S.W.3d at 642 ("[I]t has long been held that such alimony agreements and other marital property agreements, even when incorporated into divorce decrees, are enforceable as contracts and governed by contract law[.]"). As with any other contract, absent consent of the parties, the provisions of such an agreement will not be modified or set aside except for fraud, accident, or mutual mistake of fact. *Schwartz*, 247 S.W.3d at 806 (citing *Boyd v. Boyd*, 545 S.W.2d 520, 523 (Tex. App.—Houston [1st Dist.] 1976, no writ)).

### 2. Application of law to the facts

The MSA expressly refers to Norbert's $1,600 monthly obligation as "spousal maintenance, pursuant to Chapter 8 of the Texas Family Code, Section 8.051(2)(A) . . . ." That is the only mention of chapter 8 in the MSA. The final divorce decree likewise states that Clivaller is "eligible for maintenance under the provisions of Texas Family Code chapter 8 and Section 8.051(2)(A) of the Texas

12

Family Code." The final divorce decree then ordered the clerk to attach a copy of "subchapter E of chapter 8 of the Texas Family Code for the information of any employer."

While section 8.051(2)(A) addresses circumstances authorizing court-ordered spousal maintenance in the event the spouse has an incapacitating physical or mental disability, it does not address the termination or modification of such maintenance. Section 8.057, a provision found nowhere in the MSA or final divorce decree, specifically addresses a modification of court-ordered spousal maintenance. *See* Tex. Fam. Code Ann. § 8.057.

The MSA's and final divorce decree's specific inclusion of section 8.051(2)(A) and conspicuous exclusion of section 8.057 or any other section in chapter eight, lead us to conclude that the parties did not intend for the agreement to be governed by chapter eight. *McCollough*, 212 S.W.3d at 647 ("If the parties had intended for the agreement to be governed by section 8.057 or any other provision in chapter 8 of the family code, they could have written language to that effect into the contract."). Our conclusion is buttressed by the following statement contained in the MSA, written in all capital letters, bolded, and underlined: "**THIS AGREEMENT IS NOT SUBJECT TO REVOCATION AND IS ENFORCEABLE AS A CONTRACT.**"

Therefore, we hold that the trial court did not abuse its discretion by failing to modify Norbert's spousal maintenance obligation because the payments are

contractual alimony not subject to the provisions of chapter eight. *See Ammann v. Ammann*, No. 03-09-00177-CV, 2010 WL 4260955, at *3 (Tex. App.—Austin Oct. 28, 2010, no pet.) (mem. op.) (holding that "the parties intended to, and by executing the Rule 11 Agreement did, create a contractual alimony agreement outside of the context of chapter 8, and that [the ex-husband's] payment obligation is not court-ordered spousal maintenance governed by that chapter").

**B.**    **Even if court-ordered spousal maintenance, the trial court's finding of no material and substantial change is not against the great weight and preponderance of the evidence and thus not an abuse of discretion.**

But even if the references in the MSA and final divorce decree to section 8.051(2)(A) and chapter eight of the family code meant that the attempted modification of Norbert's monthly payments are governed by chapter eight rather than the contractual language of the MSA, we alternatively hold that the trial court's finding of no material and substantial change is not against the great weight and preponderance of the evidence.

**1.    Law governing modification of court-ordered spousal maintenance**

Section 8.057 of the Texas Family Code outlines the requirements for modification of court-ordered spousal maintenance, providing, in part, as follows:

> After a hearing, the court may modify an original or modified order or portion of a decree providing for maintenance on a proper showing of a material and substantial change in circumstances, including circumstances reflected in the factors specified in Section 8.052, relating to either party or to a child of the marriage described by Section 8.051(2)(C), if applicable. The court shall apply the modification only to payment accruing after the filing of the motion to modify.

14

Tex. Fam. Code Ann. § 8.057(c); *see also Marquez v. Marquez*, No. 04-04-00771-CV, 2006 WL 1152235, at *1 (Tex. App.—San Antonio May 3, 2006, no pet.) (mem. op.). The burden is on the movant to make a proper showing of a material and substantial change in circumstances relating to either party. *See* Tex. Fam. Code Ann. § 8.057(c); *Marquez*, 2006 WL 1152235, at *3; *Tyler v. Talburt*, No. 04-02-00245-CV, 2003 WL 1964186, at *1 (Tex. App.—San Antonio Apr. 30, 2003, no pet.) (mem. op.). To determine if a material and substantial change has occurred, the trial court must be able to compare the financial circumstances of the parties at the time of the existing maintenance order with their circumstances at the time the modification is sought. *Marquez*, 2006 WL 1152235, at *1; *In re Lendman*, 170 S.W.3d 894, 899–900 (Tex. App.—Texarkana 2005, no pet .).

### 2. Application of law to the facts

The facts Norbert identifies as contrary to the trial court's finding of no material and substantial change are that (1) he is no longer working, (2) he is receiving Social Security disability income, (3) his medical disability has worsened, (4) he requires assistance from his mother, (5) he does not have sufficient funds to pay his own monthly living expenses, and (6) Clivaller has a new job that provides her a benefit of living rent free. Mindful that Norbert, as the party seeking modification, bore the burden of establishing a material and substantial change, we conclude that

15

the trial court did not abuse its discretion by finding that no such change was established.

While Norbert presented evidence to support that he earned less money and that he now receives Social Security income, the evidence revealed that his current employment situation is not due solely to his disease. Indeed, Norbert testified that he was terminated from his first job due to a reduction in force, and he testified that he left his second job voluntarily due to a change in his compensation structure. Norbert did testify that he was unable to fulfill the physical requirements of his third job because it "included a lot of labor" that he "just became unable to do . . . ." And, he did broadly state that the reason he does not currently have a job is because he is "not capable of working" and his "body won't allow it." But Norbert did not present any medical testimony or records to demonstrate that he is physically unable to work and earn a sufficient income to support himself and maintain his spousal maintenance obligation. That is, while Norbert may not currently be able to physically perform his third job that "included a lot of labor," there was no testimony to demonstrate that Norbert is unable to obtain employment in some other less labor-intensive job.

With respect to his disability, Norbert acknowledged that he had suffered from the same disease at the time of the divorce decree (although he maintained that it had worsened). Thus, while Norbert's condition may have worsened (again, he presented no medical testimony or records), there was no evidence to show that it was a changed rather than an anticipated circumstance. *Cf. Hoffman v. Hoffman*, No. 03-03-

16

00062-CV, 2003 WL 22669032, at *6 (Tex. App.—Austin Nov. 13, 2003, no pet.) (mem. op.) (explaining in the context of a father's suit seeking modification of custody following divorce, because the mother's move to Pennsylvania was contemplated at the time of the original agreement, "its eventuality was not a changed circumstance but an anticipated circumstance and addressed in the original agreement[, and] [a]s a result, the move itself cannot be evidence of a material or substantial change in this case").

Finally, although Clivaller acknowledged her Facebook post stated that she was able to live "for free" because of her new job, she clarified that what she actually receives is a discount on rent in exchange for "watching the [RV/Mobile Home] park." She also testified that she did not work because of her disability and that her only source of income is her monthly Social Security disability check in the amount of $706. To the extent Clivaller's testimony was inconsistent as to her working status, it is the job of the trial court as factfinder to resolve any such inconsistency. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986) (explaining the factfinder "may resolve inconsistencies in the testimony of any witness"). Thus, the trial court could have reasonably concluded that she still has to pay rent and that "watching the [RV/Mobile Home] park" does not provide her any income in addition to her $706 monthly Social Security funds.

Section 8.057 expressly permits the trial court to consider the factors listed in section 8.052, among which are "the age, employment history, earning ability, and

17

physical and emotional condition of the spouse seeking maintenance[.]" Tex. Fam. Code Ann. §§ 8.057(c), .052(4). Thus, Clivaller's testimony that she was unable to work because of her disability supports the trial court's order denying Norbert's request to modify spousal maintenance.

The conclusions that Clivaller's financial and physical condition had not changed since the divorce decree, that Norbert's physical condition was anticipated rather than a changed circumstance, and that Norbert's financial condition—to the extent it had changed—was attributable in part due to his own choice rather than his physical disability are not against the great weight and preponderance of the evidence. Thus, the trial court did not abuse its discretion by finding no material and substantial change of circumstance.

Accordingly, we overrule Norbert's first issue.

## V.  NORBERT'S SECOND ISSUE

In his second issue, Norbert asserts that the trial court erred by denying his modification request because the current monthly payment exceeds the statutory cap contained in section 8.055. *See* Tex. Fam. Code Ann. § 8.055(a) (prohibiting court-awarded spousal maintenance monthly payments exceeding $5,000 or 20% of the obligor spouse's average monthly gross income). Norbert states that the evidence established that his income is "$2,497.00 in social security disability benefits and that is it." Thus, he contends that the $1,600 exceeds 20% of his average monthly gross income.

18

Because we held above that Norbert's monthly spousal maintenance obligation is contractual alimony rather than court-ordered spousal maintenance, the statutory cap contained in section 8.055 is inapplicable and does not support a modification. *See Ammann*, 2010 WL 4260955, at *2–3 (concluding that it made no difference that the "alimony provision contained in the Rule 11 Agreement and incorporated into the Final Divorce Decree differs from, and exceeds, the statutory provisions for the duration and termination of spousal maintenance" because the court held that the parties had created a contractual alimony agreement and thus was not governed by chapter eight of the family code). Again however, in the interest of thoroughness we nevertheless analyze Norbert's challenge under chapter 8 and find it wanting.

As the party seeking modification, Norbert bore the burden of presenting the trial court with the evidence it needed to support a modification. *Marquez*, 2006 WL 1152235, at *3. In the context of Norbert's alleged decrease in income, this required that Norbert present evidence of his income both at the time of the divorce decree and at the time he sought modification. *Id.* at *1.

The record contains no tax returns or other financial instruments that would allow the trial court to calculate Norbert's average gross monthly income. The trial court was only provided Norbert's testimony as to his income and alleged inability to work, a letter from the Social Security Administration stating that Norbert receives $2,497 in monthly benefits, and Norbert's financial information statement that he

prepared. Throughout the course of the hearing, it also came to light that Norbert had received $60,000 in severance when he was terminated from his first job.

"In a bench trial, the trial court is the sole judge of the credibility of the witnesses, assigns the weight to be given their testimony, may accept or reject all or any part of their testimony, and resolves any conflicts or inconsistencies in the testimony." *Rich v. Olah*, 274 S.W.3d 878, 884 (Tex. App.—Dallas 2008, no pet.). "We may not pass upon the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if a different answer could be reached upon review of the evidence." *Id.*; *Figueroa v. Davis*, 318 S.W.3d 53, 59 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (observing that factfinder may choose to believe one witness over another).

As the sole judge of the witnesses' credibility, the trial court was free to disbelieve Norbert's self-serving testimony regarding his current monthly income and expenses, particularly when it was revealed that he had received $60,000 that was not previously mentioned. Thus, the trial court did not abuse its discretion by denying the modification request.[5] Accordingly, we overrule Norbert's second issue.

---

[5]Moreover, Norbert did not raise this issue—that his monthly spousal maintenance obligation exceeded the statutory cap—in the trial court. We are disinclined to hold that the trial court abused its discretion by failing to sustain an argument that was never presented to it. *See Ohio Dev., LLC v. Tapatio Springs Homeowners Ass'n*, No. 04-17-00002-CV, 2017 WL 2351103, at *2 (Tex. App.—San Antonio May 31, 2017, pet. denied) (mem. op.) ("We will not hold the trial court abused its discretion in failing to sustain an argument that was not presented to it.").

## VI. CONCLUSION

Having overruled Norbert's two issues, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Delivered:  August 28, 2019