

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00112-CV

John **CLARK**,
Appellant

v.

Maria Elzbieta **CLARK**,
Appellee

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2019-CI-20250
Honorable David A. Canales, Judge Presiding

Opinion by: Liza A. Rodriguez, Justice

Sitting: Beth Watkins, Justice
Liza A. Rodriguez, Justice
Sandee Bryan Marion, Justice[1]

Delivered and Filed: October 31, 2023

REVERSED AND REMANDED

John Clark ("John") appeals from a final decree of divorce. He complains the trial court abused its discretion by ordering him to pay his former spouse, Maria Elzbieta Clark ("Maria"), maintenance in the amount of $540.00 per month for a five-year period. We reverse and remand.

## BACKGROUND

John and Maria were married on March 5, 2006. More than thirteen years later, on September 25, 2019, Maria filed suit for divorce. John answered the suit and counter-petitioned for divorce. The divorce proceeded to a bench trial, at which Maria sought spousal maintenance

---

[1]Sitting by assignment pursuant to section 74.003 of the Texas Government Code

based on two separate theories. First, she asked the trial court to award her maintenance based on Chapter 8 of the Texas Family Code. Second, she asked the trial court to award her maintenance based on "contractual alimony."[2]

In her testimony, Maria explained that she had a serious medical condition that prevented her from working. She had no income and lived with her daughter. According to Maria, John received payments from the Department of Veterans Affairs ("VA") in the amount of $3,809.02 per month, and social security payments in the amount of $816.00 per month. Additionally, Maria testified that John played the saxophone and earned additional income by performing with a band. Maria testified that John played "many gigs" and was paid "under the table," but she could not estimate how much income he received from performing.

Maria also presented a letter signed by John, which was admitted into evidence. In the letter, which was dated May 12, 2019, John promised to pay Maria $760.00 per month in alimony for the rest of her life. Maria testified that after the couple separated, John told her that she did not have to worry about her future and that he would not leave her without money. John decided he would give Maria $760.00 a month. John paid Maria at least $760.00 a month for seventeen months. Sometimes John would pay Maria more—$900.00 or $1,000.00 a month. However, in October 2020, John stopped making monthly payments to Maria altogether.

In his testimony, John confirmed that he received monthly VA disability payments and social security payments and that he received some money for performing as a musician. John testified that, on average, he earned "between $100 and $200" per performance. He explained that "this month [he] had two weddings," but that "next month he may not have any." He added

---

[2]During opening statements, Maria's counsel advised the trial court, "The problem with Chapter 8 may be Mr. Clark's income is exclusively through SSI and VA disability. I do want to explore, through his testimony, a little of his capacity to earn before just giving up the request under Chapter 8." Maria's counsel also stated: "If the Court's unwilling, based on the source of his current income, to say Chapter 8 can[] be applied, then I'm asking the Court to apply contractual alimony in the amount of $760.00 based on his letter and promise to my client, and that's what we'll settle for."

that "[h]aving two [gigs] in one month is an incredible thing." According to John, performing was more of a hobby than a source of income because it was sporadic and required him to incur expenses, such as travel costs and lodging. John contended that he was fortunate to "break even."

John further testified that, apart from the VA disability payments, social security payments, and the money he received for performing, he had no other income. John also acknowledged that he had made payments to Maria from June 2019 to October 2020. According to John, he made the payments "out of fear" and because he had signed a document promising to make the payments.

In closing arguments, Maria argued that the letter she received from John qualified as a contract. Maria asked the trial court "to hold [John] to the contract, to the promise he made of $760 a month and let him keep making that payment." Maria further argued that she met the requirements of Chapter 8 because she was disabled, her income did not meet her minimal needs, and she was entitled to maintenance under Chapter 8. John countered that the letter was not a contract because it was not supported by consideration and because Maria did not sign it. John also argued that the majority of his income—his VA disability and social security payments— could not be considered in calculating spousal maintenance under Chapter 8, and that the money he received from playing in the band was too insignificant to be considered.

The trial court signed a final decree of divorce, dissolving the marriage between John and Maria, awarding certain property and debts to each party, and ordering John to pay Maria maintenance in the amount of $540.00 per month beginning on November 1, 2021, and continuing on the first day of every month thereafter for a period of five years. The maintenance provision further stated: "Respondent, JOHN CLARK, is ordered to pay maintenance under Chapter 8 of the Family Code and also as contractual alimony."

John timely filed a notice of appeal, a request for findings of fact and conclusions of law, and a notice of past due findings of fact and conclusions of law. Although properly requested, the trial court did not timely file findings of fact and conclusions of law. We abated the appeal and ordered the trial court to file findings of fact and conclusions of law. After the trial court filed its findings of fact and conclusions of law, we ordered the parties to submit supplemental briefing. John filed a supplemental brief, but Maria did not.[3]

## STANDARD OF REVIEW

We review an award of spousal maintenance for an abuse of discretion. *Diaz v. Diaz*, 350 S.W.3d 251, 254 (Tex. App.—San Antonio 2011, pet. denied). A trial court abuses its discretion when it acts unreasonably, arbitrarily, or without reference to any guiding rules and principles. *In re R.H.B.*, 660 S.W.3d 136, 147 (Tex. App.—San Antonio 2022, no pet.). "Under the abuse of discretion standard, challenges to the legal and factual sufficiency of the evidence are not independent grounds for asserting error, but they are relevant factors used in assessing whether the trial court abused its discretion." *Diaz*, 350 S.W.3d at 254. Ultimately, we "determine whether, based on the elicited evidence, the trial court made a reasonable decision." *Garcia v. Garcia*, 170 S.W.3d 644, 649 (Tex. App.—El Paso 2005, no pet.). To uphold the trial court's ruling, "we must conclude the trial court's decision was neither arbitrary nor unreasonable." *Id*.

## ANALYSIS

John argues the trial court abused its discretion by ordering him to pay Maria $540.00 per month as maintenance for five years. The divorce decree states that these maintenance payments are based on both Chapter 8 of the Texas Family Code and "contractual alimony." We must determine if the trial court's order requiring John to pay Maria $540.00 per month as maintenance is unreasonable, arbitrary, or without reference to any guiding rules and principles.

---

[3]Maria did not file an appellee's brief.

The Texas Family Code defines "maintenance" as "an award in a suit for dissolution of a marriage of periodic payments from the future income of one spouse for the support of the other spouse." TEX. FAM. CODE § 8.001(1). Chapter 8 of the Texas Family Code authorizes trial courts to award spousal maintenance under very narrow and limited circumstances. *Dalton v. Dalton*, 551 S.W.3d 126, 130 (Tex. 2018). "The former spouse must be eligible to receive spousal maintenance; the duration and amount of the payments must not exceed specified limits; the obligation must automatically terminate upon certain events; and the court must consider a wide variety of factors to determine the nature, amount, duration, and manner of periodic payments." *Id*. (internal quotation marks omitted); *see* TEX. FAM. CODE § 8.051 (eligibility); § 8.054 (duration); § 8.055(a) (amount); § 8.056 (termination); § 8.052 (relevant factors). Under Chapter 8, the amount of spousal maintenance is discretionary within certain statutory limits. Specifically, the amount of monthly spousal maintenance cannot be "more than the lesser of: (1) $5,000.00; or (2) 20 percent of the spouse's average monthly gross income." *Id*. § 8.055(a). Furthermore, Chapter 8 provides that "gross income" "does not include . . . Department of Veterans Affairs service-connected disability compensation; [or] supplemental security income (SSI), social security benefits, and disability benefits." *Id*. § 8.055(a-1)(2).

Texas law also permits parties to agree to contractual spousal maintenance that varies from Chapter 8 of the Texas Family Code. *See id*. § 7.006(a) (providing that "spouses may enter into a written agreement concerning . . . the liabilities of the spouses and maintenance of either spouse."). "Chapter 8 does not apply to a spousal maintenance provision in a divorce decree that restates a parties' contractual spousal maintenance agreement." *In re Marriage of Martz*, No. 09-21-00048-CV, 2022 WL 2251731, at *7 (Tex. App.—Beaumont June 23, 2022, pet. denied); *accord In re Dupree*, 118 S.W.3d 911, 916 (Tex. App.—Dallas 2003, orig. proceeding [mand. denied]) (concluding that contractual spousal alimony provided for in a divorce decree was an

agreement pursuant to section 7.006 of the Texas Family Code, and therefore, it was considered a contract and not an agreement for spousal maintenance made pursuant to Chapter 8). Contractual spousal maintenance agreements are binding on the parties and, even when incorporated into divorce decrees, are interpreted under general contract law. *Schwartz v. Schwartz*, 247 S.W.3d 804, 806 (Tex. App.—Dallas 2008, no pet.). "Courts may not rewrite the parties' contract, nor should courts add to its language." *In re Davenport*, 522 S.W.3d 452, 457 (Tex. 2017) (orig. proceeding). A divorce decree that incorporates an agreement between the parties must not remove and add material terms; instead, it must be "in strict or literal compliance" with the agreement. *Chisolm v. Chisholm*, 209 S.W.3d 96, 98 (Tex. 2006). "As with any other contract, absent consent of the parties, the provisions of an [alimony] agreement will not be modified or set aside except for fraud, accident or mutual mistake of fact." *Ammann v. Ammann*, No. 03-09-00177-CV, 2010 WL 4260955, at *1 (Tex. App.—Austin Oct. 28, 2010, no pet.).

Here, Maria testified that John's primary sources of income were VA disability benefits in the amount of $3,809.02 per month and social security in the amount of $816.00 per month. She further testified that John received additional income from playing saxophone in a band. John testified that he receives VA and social security disability payments each month and that he earns a small amount of money from his musical performances. According to John, the most he ever performed was twice a month. In the past month, he had played at two weddings. John testified that he averages somewhere "between $100 and $200" per performance. According to John, the last time he performed was about ten days before trial. He recalled that he earned more than $100 for that performance, but he was not sure if he earned more than $200. John further testified that he had no other income.

Applying the "gross income" requirements set out in Chapter 8, the trial court could not consider John's VA disability and his social security income in calculating the amount of spousal maintenance. *See* TEX. FAM. CODE § 8.055(a-1)(2). The only income the trial court could have considered in calculating the amount of spousal maintenance was the income from John's musical performances. However, this income was nowhere near $2,700.00 a month, which is the amount necessary to arrive at an award of $540.00 per month. *See id*. § 8.055(a) (stating that monthly spousal maintenance cannot be "more than the lesser of: (1) $5,000.00; or (2) 20 percent of the spouse's average monthly gross income."). There is no evidence that John's average monthly gross income was sufficient to support the spousal maintenance ordered in the divorce decree. Therefore, the trial court abused its discretion by ordering John to pay spousal maintenance in the amount of $540.00 per month under Chapter 8 of the Family Code. *See Keating v. Keating*, No. 02-20-00271-CV, 2022 WL 187985, at *6 (Tex. App.—Fort Worth Jan. 20, 2022, no pet.) (reversing and remanding for new trial on the amount of spousal maintenance when there was no evidence that the amount awarded was within the statutory twenty-percent limit); *In re Marriage of Franklin*, No. 10-13-00007-CV, 2013 WL 4799063, at *3 (Tex. App.—Waco Aug. 29, 2013, no pet.) (holding that the trial court abused its discretion by imposing a spousal maintenance amount greater than the statutory limits under Section 8.055(a) and remanding to trial court to re-address the amount of spousal maintenance).

To the extent John was ordered to pay the $540.00 per month "as contractual alimony," the divorce decree is not "in strict or literal compliance" with the terms of the parties' purported agreement.[4] *See Chisolm*, 209 S.W.3d at 98. Maria's theory was that John agreed to pay her $760.00 per month for the rest of her life. However, by ordering payments in the amount of $540.00 per month for a period of five years, the trial court impermissibly altered the amount and

---

[4]We express no opinion about the validity of the agreement.

the duration of the payments. "A trial court has no power to supply terms, provisions, or conditions not previously agreed upon by the parties." *Ammann*, 2010 WL 4260955, at *3. Therefore, the trial court abused its discretion by ordering John to pay $540.00 per month "as contractual alimony."

## CONCLUSION

We conclude the trial court's award of $540.00 per month "as maintenance under Chapter 8 of the Family Code and also as contractual alimony" is arbitrary and without reference to any guiding rules and principles. Accordingly, we reverse this portion of the divorce decree and remand this case to the trial court for a new trial on that issue.

Liza A. Rodriguez, Justice